IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JACQUELINE MARIE KEEL,⁣ )
⁣ )
              Plaintiff,⁣ )
⁣ )
            v.⁣ )        1:17CV387
⁣ )
NANCY A. BERRYHILL,⁣ )
Acting Commissioner of Social Security,⁣ )
⁣ )
            Defendant.⁣ )

<u>MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Jacqueline Marie Keel ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      <u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed her application for DIB on October 23, 2013, alleging a disability onset date of October 22, 2013. (Tr. at 20, 157-58.)[1] Her claim was denied on initial review, with no separate reconsideration review. (Tr. at 87-100, 106-10.)[2] Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").

---

[1] Transcript citations refer to the Administrative Record [Doc. #9].

[2] Through the time of her hearing, Plaintiff resided in Alabama, one of ten states participating in a prototype test eliminating the reconsideration step of the administrative review process. <u>See</u> SOC. SEC. ADMIN., DI 12015.100 Disability Redesign Prototype Model (2014), http://policy.ssa.gov/poms.nsf/lnx/0412015100.

(Tr. at 111-12.) Plaintiff attended the subsequent hearing on February 10, 2016, along with her attorney and an impartial vocational expert. (Tr. at 20.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 29), and, on February 23, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.

However, if the claimant establishes an inability to return to prior work, the analysis proceeds

to the fifth step, which "requires the Commissioner to prove that a significant number of jobs

exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453

F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able

to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d

at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving

that [the claimant] remains able to work other jobs available in the community," the claimant

qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful

activity" since October 22, 2013, her alleged onset date. Plaintiff therefore met her burden at

step one of the sequential evaluation process. At step two, the ALJ further determined that

Plaintiff suffered from the following severe impairments:

> degenerative disk disease (DDD)/osteoarthritis of the cervical, thoracic and/or
> lumbar spine, status post cervical fusion at C5-7 in 2011, hypertension, and
> Epstein-Barr (EBV).

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in

combination, met or equaled a disability listing. (Tr. at 24.) Therefore, the ALJ assessed

Plaintiff's RFC and determined that she could perform sedentary work with the following,

additional limitations:

> She can stand and/or walk in combination, with normal breaks, for at least two
> hours during an eight-hour workday and she can sit, with normal breaks for up

to eight hours during an eight-hour workday. [Plaintiff] can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. [She] can frequently balance and occasionally stoop, kneel, crouch, and crawl. She should not be required to perform overhead work activities or reach above the shoulder level with her upper extremities bilaterally. She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity and working in areas of vibration. She should avoid concentrated exposure to pulmonary irritants including fumes, dusts, odors, gases[,] and areas of poor ventilation. [Plaintiff] should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery and the operation of motorized vehicles and equipment.

(Tr. at 24.) The ALJ found at step four that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform her past relevant work as a secretary. (Tr. at 28.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 28-29.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. First, Plaintiff contends that substantial evidence fails to support the ALJ's physical RFC determination because the ALJ failed to fully develop the record regarding Plaintiff's physical impairments. Second, Plaintiff contends that substantial evidence fails to support the ALJ's credibility determination. After a careful review of the record, the Court agrees that substantial evidence fails to support the ALJ's physical RFC determination, given the lack of any medical evaluation of Plaintiff's physical impairments and given the ALJ's stated reliance on "medical source opinions" when no such opinions exist regarding Plaintiff's physical impairments, as discussed below.

In the present case, at step two of the sequential analysis, the ALJ did not identify any severe mental impairments but did identify multiple physical impairments, including degenerative disc disease post cervical fusion, hypertension, and "Epstein-Barr (EBV)." (Tr.

at 22.) However, no treating physicians issued opinions in this case, and although Plaintiff underwent a consultative <u>psychological</u> evaluation (Tr. at 546-50), no consultative <u>physical</u> examination was ordered. Thus, the only opinion evidence regarding Plaintiff's physical limitations as a result of her impairments came from Latasha Thomas, a single decision maker ("SDM") who evaluated Plaintiff's physical RFC at the initial level. (Tr. at 97.) As all parties agree, a SDM is an individual "with no known medical expertise," and as such, her assessment "is deemed to be an adjudicatory document with no evidentiary weight." (Tr. at 27-28.) Therefore, the ALJ correctly assigned "no weight" to Ms. Thomas' assessment. (Tr. at 27.) Having done so, the ALJ was left with no medical opinion evidence of Plaintiff's physical abilities.[5]

Lacking any opinion evidence regarding Plaintiff's physical impairments, the ALJ proceeded with her own evaluation in setting Plaintiff's RFC. With respect to Plaintiff's chronic Epstein Barr Virus, the ALJ found as follows:

> After consideration of the totality of the evidence of record, the undersigned finds EBV is a severe impairment and this condition would clearly prevent her from being able to perform sustained activities at the heavier levels of exertion. Additionally, [Plaintiff] should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity and working in areas of vibration. She should

---

[5] The Court notes that as part of the administrative process, a State agency physician often reviews all of the relevant evidence, either initially and/or upon reconsideration, and issues an evaluation or assessment. State agency physicians are considered experts in the Social Security disability programs, and as such, under the applicable regulatory provisions, their findings about the nature and severity of an individual's impairments are treated by ALJs as opinions of nonexamining physicians. <u>See</u> 20 C.F.R. §§ 404.1527, 404.1513a. However, this case followed a prototype process with no state agency medical consultation at the initial review and no reconsideration decision. As a result, there is no state agency opinion evidence with regard to Plaintiff's physical impairments.

avoid concentrated exposure to pulmonary irritants including fumes, dusts, odors, gases and areas of poor ventilation.

(Tr. at 26.) The ALJ next included the following discussion of Plaintiff's neck, back, and arm pain:

> [T]he objective evidence clearly indicates [Plaintiff] has a history of degenerative disc disease and surgical surgery on her cervical spine and more recent studies indicate some degenerative changes in her thoracic and lumbar areas as well. These conditions, when considered in combination with her history of EBV would relegate [Plaintiff] to a range of sedentary with the ability to occasionally lift and/or carry ten pounds and frequent[ly] lift and/or carry less than ten pounds. She can stand and/or walk in combination, with normal breaks, for at least two hours during an eight-hour workday. [Plaintiff] can occasionally climb ramps and stairs and should never climb ladders, ropes or scaffolds. [Plaintiff] can frequently balance and occasionally stoop, kneel, crouch, and crawl. She should not be required to perform overhead work activities or reach above the shoulder level with her upper extremities bilaterally. [Plaintiff] should avoid exposure to industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery and the operation of motorized vehicles and equipment.

(Tr. at 26-27.) The ALJ further noted that Plaintiff's hypertension, although severe, "would not warrant additional limitations beyond the range of sedentary work as outlined above." (Tr. at 27.) The assessment issued by the ALJ is, without doubt, very restrictive. However, nothing in the medical record connects Plaintiff's impairments to the specific limitations set out above.

Moreover, in reaching her conclusions, the ALJ necessarily made numerous medical determinations and findings. For example, with respect to Plaintiff's Epstein-Barr Virus, the record reflects that Plaintiff was diagnosed with chronic EBV (Tr. at 721), and laboratory tests reflect that Plaintiff tested positive for "chronic or reactivated" EBV throughout the relevant period, including on June 20, 2011 (Tr. at 332), December 10, 2012 (Tr. at 397-98), November

29, 2013 (Tr. at 544), and December 29, 2014 (Tr. at 564-65).[6] The ALJ nevertheless found that "the objective medical evidence does not indicate that these conditions were chronic or ongoing, but were more consistent with episodic flares of her underlying conditions" (Tr. at 25), further noting that "EBV is indolent in nature, [and] there is no evidence of chronic flares or complications secondary to the virus" (Tr. at 26). However, it is unclear on what basis the ALJ made these determinations with respect to chronic EBV generally or Plaintiff's complications more specifically. There is no medical evaluation supporting the ALJ's description of the condition or its effect on Plaintiff. Similarly, the ALJ found that Plaintiff "has not been on any antibiotics or steroids for approximately 8 months, which is simply not consistent for someone who has recurrent severe and disabling infections." (Tr. at 25.) However, it is unclear on what basis the ALJ determined that a lack of antibiotics or steroids for 8 months was not consistent with chronic disabling EBV. Plaintiff testified that antibiotics are not used to treat viral infections like EBV, especially for someone with a history of recurrent MRSA infections like Plaintiff, and that while steroids can sometimes be helpful in the short term, they can actually aggravate a condition like chronic EBV. (Tr. at 62, 64-65.) Thus, without any medical review or analysis in this case, it is hard to determine whether the ALJ's conclusions are supported by substantial evidence.

In addition, the ALJ repeatedly relied on the fact that "none of [Plaintiff's] attending or treatment physicians have indicated she is totally disabled" and "not one of the medical sources of record has offered an opinion that [Plaintiff] has limitations greater than those stated in the [RFC]." (Tr. at 26, 28.) However, there is no evidence that any physician gave

_____

[6] A laboratory test in July 2015 was characterized as "benign" but did not include EBV testing. (Tr. at 719-25.)

any evaluation at all regarding the degree of Plaintiff's physical limitations, whether consistent with the RFC or not. Thus, the lack of any evaluation by Plaintiff's treating providers, in the absence of any other medical review, does not provide supporting evidence for the RFC determination.

Further, in setting the RFC, the ALJ stated that she "considered the <u>medical source opinion evidence</u> to be a <u>major factor</u> in assessing [Plaintiff's] limitations and evaluating the credibility of her subjective complaints." (Tr. at 28 (emphasis added).) The ALJ specifically explained that the RFC was based on "the significant weight assigned to the opinions of Dr. Arnold and Dr. Estock." (Tr. at 28.) However, Dr. Estock is the state agency psychiatrist who evaluated Plaintiff's mental impairments, and Dr. Arnold is the psychologist who performed the consultative psychological examination. (Tr. at 93, 547.) Thus, both of the opinions cited by the ALJ address Plaintiff's mental limitations (Tr. at 27), not physical limitations. As noted above, the ALJ concluded at step two of the evaluation that Plaintiff did not suffer from any severe mental impairments, and there are no limitations included in the RFC related to mental impairments. In the circumstances, it is not clear how the ALJ relied on the medical source opinion evidence as a "major factor" in assessing Plaintiff's limitations and setting the RFC, when the RFC reflected only physical limitations and there was no medical source opinion evidence regarding Plaintiff's physical impairments in the record.

In sum, the ALJ did not have in the record a state agency medical consultative evaluation, a medical source statement from a treating physician, a physical consultative examination, or any other medical evaluation of the physical impairments that are reflected in Plaintiff's medical records and that the ALJ identified as severe impairments at step two. The

Court notes that, in setting the RFC, the ALJ is not required to obtain a medical opinion as to the RFC, since the RFC is an administrative assessment.  See Felton-Miller v. Astrue, 459 F. App'x 226, 2011 WL 6396463 (4th Cir. Dec. 21, 2011).  Similarly, an ALJ is not obligated to obtain a consultative examination in every case.  See 20 C.F.R. § 404.1519a (describing the process for obtaining a consultative examination if evidence is needed that is not contained in the records from the medical sources).  However, in this case, there were no opinions of treating, examining, or nonexamining physicians on which to rely, and the ALJ nevertheless made various medical determinations regarding the nature of Plaintiff's conditions, and then explicitly based the RFC determination on "medical source opinion evidence," when there was no medical source opinion evidence in the record related to Plaintiff's physical impairments.

For all of these reasons, the Court concludes that, in the particular circumstances presented here, remand is required.[7]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g).  The Commissioner should be directed to remand

---

[7] The Court also notes that with respect to Plaintiff's neck and back condition, the ALJ relied on the fact that the "medical evidence of record does not contain much treatment for her neck or complaints of neck or arm pain despite the cervical fusion." (Tr. at 26.) However, Plaintiff testified that she did not have insurance while her husband was not working and was therefore unable to obtain treatment. (Tr. at 63-64, 68-69.)  In addition, with respect to EBV, the ALJ relied on the fact that Plaintiff had "not been referred for treatment or sought an evaluation with [an] infectious disease specialist." (Tr. at 25.)  However, the record reflects that Plaintiff was referred to a rheumatologist and an infectious disease specialist in 2011 but could not afford to keep the appointments (Tr. at 323-24, 189), and further reflects that she was referred to an immunologist or infectious disease specialist again in 2014 (Tr. at 552, 554), but at that time was generally only receiving medical care at intermittent visits to the emergency room because she did not have insurance and because the free clinics were not accepting new patients (Tr. at 63-64, 68-69).  She also testified to treatment by an immunologist, but those records do not appear to be included in the record. (Tr. at 67.)  The Court need not address these issues further at this time, since the matter will be subject to further consideration and review on remand.

the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #12] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 27th day of August, 2018.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge
